IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARLAND DEAN BARNES,

Petitioner,

v.

CHRIS BUESGEN,

Respondent.

OPINION and ORDER

23-cv-519-jdp

---

Petitioner Garland Dean Barnes, appearing by counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Barnes challenges his state-court conviction for delivery of methamphetamine. He contends that his due process rights were violated by the prosecution failing to turn over a wire recording that he contends was exculpatory, and that the court violated the Confrontation Clause by allowing hearsay testimony that a police officer witnessed the drug buy.

I conclude that given the overwhelming evidence of Barnes's guilt, the state courts did not unreasonably apply federal law in rejecting his due process and Confrontation Clause arguments. Accordingly, I will deny his habeas petition.

BACKGROUND

The following facts are taken from the petition and the state court records provided by Barnes and the state.

Barnes was charged with delivering more than 50 grams of methamphetamine in the city of Superior on April 21, 2013. The transaction resulted from a controlled drug buy organized by Superior Police Department narcotics investigator Franz Winterscheidt, after an

informant named Charles Marciniak told police that a man later identified as Barnes offered to sell him meth.

As part of an operation to catch Barnes, police recorded four phone calls between Marciniak and someone prosecution witnesses identified as Barnes, all taking place within the hour before the controlled buy. In one of the calls (due to technical error only Marciniak's side was recorded), Marciniak stated, "Hello. Two? Alright. I'll take 'em. You're gonna have to— you're gonna have to run up again then maybe. You might have to see me sooner than next weekend. What's that? Right on. Well then, 4? Alright. Do that. Alright. Bye." *State v. Barnes*, 2023 WI 45, ¶ 9, 407 Wis. 2d 652, 990 N.W.2d 759.[1] The state contended that this was evidence of Marciniak seeking to buy four ounces of meth from Barnes.

This led to the controlled buy, in which police outfitted Marciniak with a body wire, provided him with marked money and sent him to the buy location, a parking lot behind a bar. Marciniak pulled his vehicle up to Barnes's vehicle so their driver's side doors were facing. Barnes's girlfriend accompanied him in the vehicle. Officers arrived at the scene just as the transaction was taking place, and there were no surveillance photographs or video footage of the exchange. It was undisputed that Marciniak threw the marked money into Barnes's vehicle. Barnes drove away, striking one of the police vehicles. Police followed Barnes and pulled him over. When they arrested Barnes, they found the buy money in his vehicle. Police also found thousands of dollars in unmarked cash on Barnes's person and in his vehicle. Police searched Barnes's girlfriend and found meth and heroin.

---

[1] The parties don't submit the phone recordings, but the parties do not dispute the contents as recounted by the Wisconsin Supreme Court.

Police caught up to Marciniak about five to ten minutes after the incident; their efforts to surveil him were hampered by the focus on following and arresting Barnes. Marciniak gave police a box containing four ounces of meth, the amount discussed on one of the phone calls shortly before the buy.

At trial, the jury heard the four phone calls. Winterscheidt testified about the phone calls and the steps used to prepare for the controlled buy, including searches of Marciniak and his vehicle beforehand to make sure he wasn't hiding contraband or money.

Other officers testified about what they saw of the transaction from a distance; they didn't see the exchange of drugs and money. A report indicated that another officer, Officer Clauer, actually observed the transaction. But the state was late in listing him as a witness and giving the defense the report. So the state trial court granted Barnes's motion to exclude Clauer's testimony. But on redirect of Winterscheidt, the prosecution asked him whether he was aware of any officer who saw the transaction. After defense counsel's objection was overruled on the ground that the prosecution didn't seek to introduce the evidence for the truth of the matter asserted, Winterscheidt responded that Clauer saw the transaction.

Marciniak testified about his criminal history, his use as an informant, and his participation in setting up and executing the controlled buy with Barnes. According to Marciniak, he entered the parking lot and parked next to Barnes's vehicle. Marciniak testified that he threw the bag of money into Barnes's truck, and then Barnes threw back a black box, which contained the meth.

The main thrust of the defense was that Marciniak set Barnes up to avoid punishment for his own criminal charges for delivery of methamphetamine, and that the transaction actually involved Barnes buying meth from Marciniak, not the other way around. Defense

counsel argued that Barnes sought to buy meth for his girlfriend. Defense counsel attacked the thoroughness of the investigation and noted that the transaction was not videotaped or photographed.

However, there was an audio recording of the events by Marciniak's wire. The state initially maintained that Marciniak's audio-recording device hadn't picked up any audible voices. Sergeant Winterscheidt initially testified as much, stating that there was only background noise on the recording. But another officer testified, "You can hear Mr. Marciniak talking on the recording, yes." Dkt. 8-6, at 235.[2] At the end of the first day of trial, outside the jury's presence, the court ordered the state to disclose the recording. During the second day of trial, another officer testified that there were "voices" on the recording—"[t]he informant certainly and another person you can vaguely hear,"—and that Winterscheidt hadn't been truthful when he said that there was only background noise. Dkt. 8-7, at 10. Defense counsel recalled Winterscheidt, who admitted that his previous testimony about the recording had been "inaccurate." *Id.* at 161.

After the jury found Barnes guilty of delivering more than 50 grams of meth, Barnes filed postconviction motions seeking a new trial based upon numerous evidentiary errors, including arguments that (1) expert enhancement of Marciniak's wire recording revealed exculpatory content, so the state's withholding of the audio recording constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) the court's admission of testimony regarding Officer Clauer's hearsay observations about eyewitnessing the transaction violated Barnes's right to confrontation. The circuit court denied the motions.

---

[2] For documents submitted by the parties I will refer to the page numbering in the court's electronic filing system rather than the internal pagination of those documents.

Barnes appealed, but the Wisconsin Court of Appeals affirmed, finding no *Brady* violation because the undisclosed recording was ambiguous, and therefore neither favorable nor material. *State v. Barnes*, 2021 WI App 27, 397 Wis. 2d 241, 959 N.W.2d 75. The court of appeals also found that testimony regarding Clauser's observations was not hearsay and did not violate Barnes's confrontation right because it was not presented for the truth of the matter asserted, and alternatively, that the defense opened the door by challenging the quality of the investigation. Subsequently, the United States Supreme Court issued an opinion in *Hemphill v. New York*, 595 U.S. 140 (2022), rejecting "opening the door" as an exception to a confrontation clause violation. The Wisconsin Supreme Court granted review to address the confrontation issue, and affirmed the conviction on harmless error grounds. *Barnes*, 2023 WI 45.

## ANALYSIS

Barnes contends that his due process rights were violated by the prosecution failing to turn over Marciniak's wire recording, and that the trial court violated his Confrontation Clause rights by allowing reference to Officer Clauer observing the drug buy even after Clauer's testimony was excluded.[3]

To win habeas relief, Barnes must show that the Wisconsin courts rejected his claims "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "in a decision that was based on an unreasonable determination of the facts

---

[3] Barnes initially also brought an ineffective-assistance-of-counsel claim in his petition, but he has abandoned that claim. Dkt. 16, at 4 n.1.

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As relevant here, for the state court's application of federal law to be unreasonable, a petitioner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam).

When applying § 2254(d), courts look to "the last reasoned state-court decision to decide the merits of the case." *See Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc); *see also Wilson v. Sellers,* 584 U.S. 122, 125 (2018). In this case, that means that I must review the Wisconsin Court of Appeals' decision regarding Barnes's *Brady* claim, and I must review the Wisconsin Supreme Court's decision regarding his Confrontation Clause claim.

## A. *Brady* claim

Under *Brady* and the Due Process Clause of the Fourteenth Amendment, the prosecution has a duty to disclose material evidence favorable to the accused upon request. This duty extends to exculpatory evidence as well as impeachment evidence. *Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010). Evidence is "material" under *Brady* if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. *Banks v. Dretke*, 540 U.S. 668, 698 (2004).

Barnes contends that the prosecution's non-disclosure of Marciniak's wire recording was particularly harmful to him because the contents of the audio bolster his defense.[4] After the trial, Barnes had the wire recording enhanced by an expert. In addition to containing voices

---

[4] The state continues to contend that it did not fail to disclose the recording, but for purposes of this opinion I will assume that Barnes is correct in stating that the recording was not properly disclosed.

of Marciniak and the officers, the recording includes voices of both Marciniak and Barnes during their meeting. The recording includes the two exchanging general pleasantries, before one man asks, "How much dough?" and the other makes a statement along the lines of "We're good on that other one, right?" Dkt. 16, at 15.[5] The parties appear to agree that a listener cannot be certain which man made each statement.

The Wisconsin Court of Appeals assumed that the state failed to meet its discovery obligations, but it rejected Barnes's *Brady* claim, stating that Barnes failed to show that the recording was favorable to his defense or that it was material. The court concluded that the recording was ambiguous as to whether it supported the verdict, and thus wouldn't have made a difference in the outcome. The court also concluded that the recording wasn't valuable as impeachment evidence because (1) Winterscheidt had already been adequately impeached at trial by the testimony of other officers and Winterscheidt's own testimony upon recall; and (2) the recording didn't impeach Marciniak, who had testified that he couldn't recall whether he and Barnes had spoken during the transaction.

In his habeas petition, Barnes argues that the recording was favorable to him because it contradicted Winterscheidt's testimony that Marciniak told him that Barnes and Marciniak "parted company without speaking any words," Dkt. 8-6, at 122, and because the ambiguity in the recording "fails to refute the theory of defense, and creates a favorable inference, since the State was required to prove his guilt beyond a reasonable doubt." Dkt. 16, at 16. Barnes also argues that the Wisconsin Court of Appeals misapplied the *Brady* standard because it conflated the "favorable" and "material" prongs by stating that the recording's ambiguity

---

[5] The parties don't submit the recording or a transcript of it. But the state does not dispute the contents of the recording as recounted in Barnes's brief.

7

wouldn't have changed the outcome and "therefore [was] not favorable to [Barnes]." *Barnes*, 2021 WI App 27, ¶ 14.

But even assuming that the recording was favorable to Barnes because it does not directly inculpate him, it was only minimally favorable. I agree with the court of appeals that exclusion of the recording wasn't material. This additional evidence wasn't useful for impeachment purposes because it wouldn't have impeached Winterscheidt more effectively than defense counsel was already able to do, both by the testimony of two other officers contradicting Winterscheidt's account of the recording, and by Winterscheidt himself on recall, when he stated that his previous testimony had been inaccurate. Similarly, if the recording was meant to contradict Marciniak's statement—relayed through Winterscheidt's testimony—that Barnes and Marciniak didn't speak during the transaction, Marciniak already stated at trial that he didn't remember whether they spoke; the recording would have done little to impeach Marciniak's credibility.

I also agree with the court of appeals that the ambiguity over which of the voices on the recording is Barnes's and which is Marciniak's itself isn't meaningfully exculpatory. Barnes argues that it was unreasonable for the court of appeals to analyze the ambiguous recording by stating that "when a fact finder might reasonably draw an inference of either guilt or innocence from an item of evidence, that evidence cannot be said to make the difference between conviction and acquittal," *Barnes*, 2021 WI App 27, ¶ 14 (internal quotations omitted). While I agree with Barnes that this statement on its face isn't correct—one can imagine a scenario under which ambiguous evidence could help to create a reasonable doubt of a defendant's guilt—I don't take the court of appeals to have been making a blanket statement about *all* ambiguous evidence in *any* case.

But even if I concluded that the Wisconsin Court of Appeals' reasoning on this issue unreasonably applied *Brady*, and I applied a de novo standard instead, I would conclude that exclusion of the recording wasn't material. The recording wouldn't help a jury to understand whether Barnes was the buyer or the seller, the same as if the state had withheld video of the transaction in which the events were completely obscured. At most, the recording doesn't inculpate Barnes. But there was ample evidence supporting the prosecution's theory that Barnes sold Marciniak the drugs, rather than the other way around: phone recordings strongly suggested that Marciniak was a prospective buyer; Marciniak's buy money was recovered from Barnes's vehicle along with additional thousands of dollars, suggesting that Barnes was a drug dealer; four ounces of meth—the exact amount discussed over the phone—was recovered from Marciniak; the officers searched Marciniak and his vehicle before the controlled buy to ensure that he wasn't hiding anything; and Marciniak was out of the officers' sight for only five to ten minutes afterward, making it improbable that he could have obtained the box of meth after the transaction. Because the ambiguous audio recording wouldn't have affected the jury's verdict, Barnes is not entitled to habeas relief on this claim.

## B.  Confrontation Clause claim

Barnes contends that his right to confront adverse witnesses at trial was violated when Winterscheidt was allowed to testify that he had learned that Officer Clauer had witnessed the transaction, even though Clauer was prohibited from testifying as a discovery sanction. Under the Confrontation Clause of the Sixth Amendment to the United States Constitution, testimonial statements from a witness who is unavailable for trial may not be admitted against a criminal defendant unless the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 54 (2004).

9

The specific testimony of Winterscheidt's that Barnes challenges is as follows:

> Q.    Are you aware of any specific officers who saw the transaction that Chip Marciniak described to you where he tossed in the buy money and Garland tossed in the black box?
>
> A.    Yes.
>
> Q.    Who?
>
> [Defense objection overruled.]
>
> Q.    Sergeant, which investigator saw Chip Marciniak toss in a white plastic bag and Garland Barnes toss in a black box?
>
> [Defense objection overruled.]
>
> Q.    What agent saw that?
>
> A.    It was DCI Investigator Duane Clauer.

Dkt. 8-6, at 186–88.

After being recalled, Barnes's trial counsel asked Winterscheidt about the incomplete surveillance of the transaction and Winterscheidt responded:

> Q.    I thought you testified yesterday that there were police eyes on the transaction at all times. Do you remember saying that or words to that effect?
>
> A.    That's what I was under the impression of.
>
> Q.    Okay. I didn't ask you what you were under the impression of. I asked you whether or not there were eyes always on the suspect. Remember the whole thing? You didn't have video cameras but you testified that there eight to ten cops or a bunch of cops running around and other officers watching this alleged transaction. Do you remember that?
>
> A.    I remember testifying that Duane Clauer—that I learned Duane Clauer had observed the transaction.
>
> Q.    So is it your testimony that there was or was not constant visual surveillance of the alleged buy?

10

> A.    I don't know that there was constant visual surveillance at all times of the events leading up to the buy and the hand-to-hand transaction. I was only given information that DCI Agent Clauer actually observed the hand transaction.

Dkt. 8-7, at 162.

The Wisconsin Supreme Count assumed without deciding that this testimony violated Barnes's right to confront Clauer and then resolved the claim on harmless error grounds. The state doesn't address the substance of the Confrontation Clause argument, instead addressing only the harmless error analysis. So I will also assume that Barnes's right to confront Clauer was violated and I will address the harmless error issue.

The parties agree that the clearly established law at issue here is *Chapman v. California,* 386 U.S. 18 (1967), which held that, for cases reviewed on direct appeal, a constitutional error is harmless if the state proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24. The key question is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the specific guilty verdict in the case at hand. *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). Whether an error is harmless in a particular case depends upon several factors, including the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986).

If Barnes makes the showing that the Wisconsin Court of Appeals unreasonably applied *Chapman*, he must also show, applying the standard in *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993), that the references to Clauer witnessing the drug buy had "a substantial and injurious

effect or influence" on the jury's verdict. *Brown v. Davenport*, 596 U.S. 118, 122 (2022) (when a state court determines trial error was harmless, both AEDPA and *Brecht* must be satisfied before a federal court may grant habeas relief).

Although the Wisconsin Supreme Court didn't explicitly cite *Chapman*, it's clear that it applied the correct standard and Barnes doesn't argue otherwise. Rather, Barnes contends that the court unreasonably applied the harmless error standard. The key issue at trial was whether Barnes was selling the meth to Marciniak or, as Barnes contended, that Marciniak was selling the meth to Barnes and faked the evidence to make it appear that Barnes was the seller so that Marciniak would get credit for cooperating with police. The Wisconsin Supreme Court called the evidence arrayed against Barnes "overwhelming." *Barnes*, 2023 WI 45, ¶ 30. For example, it considered the phone calls between Barnes and Marciniak, in particular the call in which Marciniak was clearly speaking as a prospective buyer, for instance stating, "two? Alright, I'll take 'em." *Id.*, ¶ 31. Police searched Marciniak and his vehicle before the buy. After the buy, Marciniak was out of the officers' sight for only several minutes, and they recovered the exact amount of meth (four ounces) from Marciniak that had been discussed in the phone calls and the box in which it was contained showed no signs of crumpling that one would find if it had been stuffed in a hiding spot in the vehicle. As the Wisconsin Supreme Court stated, "If Marciniak set Barnes up, Marciniak either guessed correctly that the deal would be for four ounces or found and placed this exact amount of meth into the box within an especially short timeframe. Neither possibility is probable." *Id.* ¶ 34. The court noted that the improper testimony about Clauer viewing Barnes giving Marciniak the box occurred only twice in the trial, and one of those instances was elicited by Barnes's trial counsel. Finally, the court noted

12

that Barnes's defense was "weak" because the record didn't support Barnes's theory that Marciniak had tricked Barnes into arriving to buy meth. *Id.* ¶ 36.

Barnes argues that the evidence was not overwhelming, and Wisconsin Supreme Court didn't grapple with what he calls "glaring problems" with some of the evidence, Dkt. 16, at 28, such as that Marciniak and Winterscheidt were not credible, that there were flaws with the remaining evidence, that much of the evidence presented was otherwise consistent with his theory of defense, and that the Wisconsin Supreme Court undersold the impact that Clauer's account had because the prosecution mentioned it in its rebuttal at closings.

I'm not persuaded by these arguments. To start with, the Wisconsin Supreme Court was not required to explain its decision in detail. *Klein v. Martin*, 607 U.S. 213, 222–23 (2026) (AEDPA "bars federal courts from imposing opinion-writing standards on state courts and demands that the relevant state-court decision be given the benefit of the doubt." (internal quotations omitted)). But in any event, much of the court's discussion implicitly addressed Barnes's perceived flaws in the evidence. As to the issues with Marciniak's and Winterscheidt's credibility, the other evidence supported their accounts of the transaction (other than Winterscheidt incorrectly stating that there was nothing said between Barnes and Marciniak, an immaterial point). And much of the rest of the prosecution's case was spent highlighting the steps taken to ensure that Marciniak didn't have a chance to hide contraband, directly contradicting Barnes's theory of defense.

Barnes attempts to poke holes in that evidence in an attempt to show that the jury couldn't have been 100 percent certain about various aspects of the case, such as whether Barnes was on the other end of the phone calls with Marciniak, whether Marciniak could have been hiding meth on his person or in his vehicle because officers' pre-buy searches weren't

13

thorough enough, and whether Marciniak could have obtained or produced the meth in the five to ten minutes that he was separated from the officers after the transaction. But the reasonable doubt standard in criminal cases doesn't require the prosecution to negate every possible metaphysical doubt. Given the lack of any supporting evidence at trial for Barnes's theory that Marciniak sold Barnes the drugs, the jury could only have perceived that theory as fanciful. For instance, if Barnes wasn't on the other end of the phone calls, how did Barnes know to show up for the transaction at the agreed-upon time? How did Marciniak know that he would be able to hide meth on his person or in his car without the officers finding it during their search? How did Marciniak know in advance that he'd have five to ten minutes of unsurveilled time to retrieve the meth without officers seeing it? And how did Marciniak come up with the exact amount of meth that was determined over the phone only shortly before the controlled buy? The record didn't give the jury any plausible answers to these questions.

Turning to the transaction itself, it's true that there was no direct evidence of Barnes giving Marciniak the meth other than Marciniak's own testimony (and Winterscheidt's impermissible statements about Clauer having witnessed it). At trial and in this habeas proceeding, Barnes makes much of there being no video, photo, or audio proof of Barnes being the seller. But for obvious reasons, there's no requirement that convictions require an actual recording of the crime. Even aside from Marciniak's direct testimony, the circumstantial evidence points strongly to Barnes's guilt. The phone calls painted Barnes as the seller, the $7,200 in buy money was found in Barnes's vehicle, and police recovered four ounces of meth from Marciniak. And Barnes's theory of defense was unsupported by the evidence. In addition to all the other reasons discussed above explaining why it wasn't plausible that Marciniak framed Barnes as the seller, Barnes didn't explain at trial (or in this habeas petition) how

14

Marciniak could think that he would be able to get away with framing Barnes: there's no indication that Marciniak knew that the officers would fail to directly record the transaction. Barnes states that much of the evidence—such as the $7,200 being found in his car and Marciniak later producing the four ounces of meth—was consistent with his theory that Marciniak framed him. But this mere consistency doesn't address all the other ways that the evidence foreclosed the possibility that Barnes's theory was true. In short, there was simply no evidence supporting Barnes's alternate theory of events as true and the prosecution's as false, only speculation or conjecture that Marciniak framed Barnes.

To be clear, the harmless error standard isn't whether a hypothetical jury would have convicted Barnes absent Winterscheidt's disclosure of Clauer's account, but rather whether that disclosure affected the actual verdict. The Wisconsin Supreme Court properly framed the analysis in this way and reasonably determined that the disclosure didn't affect the actual verdict because it wasn't a key part of the testimony. It was mentioned only twice at trial, with the first time coming in the middle of a dispute over the purpose of the testimony, with the judge explicitly saying that the defense's objection was overruled because it wasn't being admitted for the truth of the matter asserted.[6] The second reference was elicited by defense counsel; the Wisconsin Supreme Court reasonably considered Barnes's challenge to this reference "obviously questionable." *Barnes*, 2023 WI 45, ¶ 35; *see also State v. Slater*, 2021 WI App 88, ¶ 40, 400 Wis. 2d 93, 968 N.W.2d 740 (discussing "invited error").

Barnes contends that the prosecution mentioned the disclosure in its closing rebuttal: "The investigators in this case did a good investigation. Yes, there's not video. Yes, there's no

---

[6] The judge also stated that he would give an instruction to the jury if the defense sought one, which counsel ultimately did not seek.

fingerprints or DNA, but we don't need them. Why? Because we had outstanding officers in the location, able to observe Garland Barnes come there that day with this black Tahoe, see the transaction." Dkt. 8-7, at 210. I conclude that the Wisconsin Supreme Court reasonably didn't consider this statement as a reference to Winterscheidt's disclosure of Clauer's account. In the context of the closings, this seemed to be a reference to the meeting between Marciniak and Barnes, not a reference to Clauer seeing Barnes throw the box of meth into Marciniak's vehicle. The prosecution's closing otherwise focused on the extremely strong circumstantial evidence of Barnes's guilt even without a direct recording of the box changing hands. I conclude that the Wisconsin Supreme Court reasonably applied *Chapman's* harmless error analysis.

But even had I concluded that the Wisconsin Supreme Court's harmless error analysis was unreasonable, Barnes wouldn't be entitled to habeas relief until I conducted my own harmless error analysis under *Brecht* and concluded that the references to Clauer witnessing the drug buy had "a substantial and injurious effect or influence" on the jury's verdict. The question under the *Brecht* standard is whether, on habeas review, the federal court itself harbors "grave doubts" about whether the trial court error affected the jury's verdict. *Davenport*, 596 U.S. at 135–36. It is Barnes's burden to make this showing. *Brown v. Eplett*, 48 F.4th 543, 557 (7th Cir. 2022).

For the sake of completeness, I'll also address the *Brecht* standard. For reasons explained above, I conclude that the improper references to Clauer's testimony were not a focus of the prosecution's case, the evidence arrayed against Barnes was overwhelming, and Barnes's theory of defense was essentially unsupported by the record. Thus I do not harbor doubts, let alone grave ones, that the inclusion of this evidence affected the jury's guilty verdict. So Barnes is not entitled to habeas relief on his Confrontation Clause ground either.

16

## C. Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because I find that no reasonable jurist would debate the outcome here, I will not issue Barnes a certificate of appealability. He may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

## ORDER

IT IS ORDERED that:

1. Petitioner Garland Dean Barnes's petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dkt. 1, is DENIED.

2. Petitioner is DENIED a certificate of appealability.

3. The clerk of court is directed to enter judgment and close the case.

Entered July 20, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge